CHARLES L. RADCLIFF AND ERMAGEAN RADCLIFF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Radcliff v. Commissioner
Docket No. 36023-86
United States Tax Court
T.C. Memo 1990-122; 1990 Tax Ct. Memo LEXIS 122; 59 T.C.M. (CCH) 61; T.C.M. (RIA) 90122; March 8, 1990
S. Craig Wakefield, for the petitioners. Avery Cousins, III, for the respondent. SWIFT
*183 MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined a deficiency in petitioners' joint Federal income taxes for 1981 in the amount of $ 70,999.15, and an addition to tax under section 6653(b) [1] in the amount of $ 35,499.58. The issues for decision are: (1) The amount of petitioners' taxable income for 1981; (2) whether income petitioner Charles L. Radcliff earned in 1981 is *123 subject to self-employment taxes; and (3) whether petitioners are liable for the section 6653(b) or alternatively the section 6653(a)(1) and (a)(2) additions to tax. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners are husband and wife and resided in St. Cloud, Florida, when they filed their petition in this case. From January through November 15, 1981, petitioner Charles L. Radcliff worked as the foreman of two lawn sod fields in Florida owned by Jimmy Don Williams or Don's Sod Company, Inc., Jimmy Don Williams' wholly-owned corporation. Petitioner Ermagean Radcliff worked for the Holikiss Properties, Ltd. T/A Holiday Inns and Restaurants. The issues before us relate to petitioner Charles Radcliff's work in the sod fields. Hereinafter, all references to "petitioner" are to Charles Radcliff, and all references to "Don's Sod Company" are to the sod farm business owned by Jimmy Don Williams as a sole proprietor and as sole shareholder *124 of Don's Sod Company, Inc. As foreman of the two lawn sod fields operated by Don's Sod Company, petitioner hired and fired all of the field workers. The workers generally were transient and were hired on a piece-work basis. Most of the workers were paid on the basis of the number of pallets of sod produced each week, although some workers were paid by the hour and some were paid by the week. The workers were hired for certain positions such as sod cutters, stackers, pallet hatchers, forklift operators, tractor operators, and rototiller operators. Petitioner was in charge of essentially all aspects of field operations. His hours and his methods of supervising and managing the field workers were not subject to the control of Mr. Williams, nor of Don's Sod Company. From January 1 to May 8, 1981, petitioner supervised overall operations of both sod fields, referred to as the Kissimmee and the Hastings fields. The day-to-day, on-site operations of the Kissimmee field also were managed directly by petitioner. The record is not clear whether petitioner or someone else managed the day-to-day, on-site operations of the Hastings field during January through May. Pursuant to Jimmy *125 Don Williams' instructions, from May 8 to November 15, 1981, petitioner continued overall supervision of both fields, but he supervised day-to-day, on-site operations only of the Hastings sod field. During those months, petitioners' son, Richard Radcliff, supervised the day-to-day, on-site operations of the Kissimmee sod field. Sod production in the fields supervised by petitioner was significantly affected by the weather and varied from week to week. Combined average production in both fields was 1,500 pallets per week, 800 pallets in the Kissimmee field and 700 pallets in the Hastings field. During one unusually productive week, 2,000 pallets of sod were produced in the Hastings field. At the end of each week, petitioner would call Jimmy Don Williams, Mrs. Williams, or Betty Jackson, the bookkeeper for Mr. Williams' company, and would report the number of sod pallets produced in each field that week. Mr. Williams, Mrs. Williams, or Ms. Jackson would then give petitioner either cash, a check made out to petitioner, or a check made out to cash. The amount of cash or of the check given to petitioner would be based on the total number of pallets of sod produced. After cashing *126 any check he received, petitioner would distribute the cash among the field workers at each field based on the work performed by each worker that week. *184 Petitioner also paid himself compensation as foreman of the sod fields out of this weekly distribution of cash. His compensation also was based on the number of pallets of sod produced each week. Don's Sod Company paid petitioner $ 4.50 for each sod pallet produced. Out of that $ 4.50 per pallet, petitioner was to pay himself $ .75. He was to split $ 2.50 among the stackers and $ .75 among the cutters. Apparently out of the remaining $ .50 per pallet, petitioner was to pay various hourly workers such as the pallet patchers and clean-up men, and he was to pay the tractor drivers $ 4.50 per hour and the forklift operators $ 250-$ 300 per week. Petitioner paid his son the per-pallet fee associated with the foreman's job for the Kissimmee field during the months his son managed the day-to-day operations in that field. Thus, from May 8 to November 15, 1981, petitioner continued to receive from Jimmy Don Williams total gross fees associated with sod production in both the Kissimmee and the Hastings fields, but petitioner *127 distributed the fees associated with sod production in the Kissimmee field to the individuals who worked in that field, including the foreman's portion of the fees that was distributed to his son. Checks also were made out to petitioner as reimbursement for expenses he incurred in the management of the sod fields. The records of Don's Sod Company indicate that the total amount of all checks issued to petitioner in 1981 relating to the number of sod pallets produced and to reimbursement for expenses was $ 279,809. Don's Sod Company did not withhold employment taxes from any of the money paid petitioner with regard to petitioner's work as foreman of the sod fields. Petitioner did not give Mr. Williams or Don's Sod Company any accounting of the manner by which the money was distributed among the field workers, and petitioner's records of his income and expenses were inadequate. During 1981, petitioner was registered with the State of Florida as a licensed agricultural contractor. Other than his pickup truck, petitioner furnished no tools or equipment for his work for Don's Sod Company. Equipment used by the field workers belonged to Don's Sod Company. Gas, oil, and all expenses *128 for petitioner's pickup truck were paid by Don's Sod Company. Petitioner quit working for Don's Sod Company in the middle of November of 1981. At the time of trial, Don's Sod Company paid the foreman of its sod fields $ 600 per week or approximately $ 30,000 per year. No income or expenses relating to petitioner's work for Don's Sod Company was reported on petitioners' 1981 joint Federal income tax return. The only income petitioners reported on their 1981 tax return was $ 12,877 in wages that petitioner Ermagean Radcliff earned from Holiday Inns and Restaurants and $ 1,944 in interest. The return was prepared by Betty Jackson, the bookkeeper for Don's Sod Company. For petitioner's occupation, it was indicated on the return that petitioner was "retired." No mention was made on the return of petitioner's work for Don's Sod Company. In April of 1983, petitioner received from Don's Sod Company two Forms 1099-NEC, Nonemployee Compensation, reflecting income paid to petitioner for 1981. Prior thereto, Don's Sod Company had not issued to petitioner or submitted to respondent any Form 1099 or W-2 Statement reporting income paid to petitioner in 1981. The two 1099s reflected total *129 income paid to petitioner in 1981 of $ 290,609 ($ 246,702 from Don's Sod Company, and $ 43,907 from Don's Sod Company, Inc.). In 1983, at the time the two Forms 1099 were issued to petitioner and submitted to respondent, Don's Sod Company was under audit by respondent with respect to its 1981 Federal income tax liability and questions were being raised about excessive business deductions that may have been claimed by Don's Sod Company. In his audit of petitioners, respondent determined that petitioner earned gross income in 1981 from his work for Don's Sod Company of $ 290,609, the total combined amount reflected on the Forms 1099 issued by Don's Sod Company. Respondent also determined that petitioner was entitled to deductible expenses, including additional expenses agreed to at trial, relating to his work for Don's Sod Company as follows: Workers
$ 155,033
Equipment Repairs
9,907
Auto Expenses
3,498
Total
$ 168,438
Respondent now determines that petitioner's total unreported taxable income for 1981 was $ 111,371, the difference between the total payments of $ 279,809 respondent now determines were made to petitioner, based on respondent's examination *130 of the records of Don's Sod Company, and the total expenses determined of $ 168,438. Respondent also determined that petitioner was not an employee of Don's Sod Company and therefore that petitioners are liable for self-employment taxes on the income petitioner earned in 1981 from Don's Sod Company, and that petitioners were liable for the fraud addition to tax. *185 During the audit, petitioner made a number of contradictory and misleading statements to respondent's agents about the income he earned from Don's Sod Company. OPINION Income and Expenses
Petitioners acknowledge that they failed to report on their 1981 joint Federal income tax return income petitioner received from Don's Sod Company. Petitioners, however, claim that the amount of income received was no more than $ 30,573. Petitioners rely primarily on petitioner's calculation of how much he should have made in 1981 based on a fee rate of $ .75 per pallet, multiplied by the average number of pallets produced each week. Petitioners also dispute that petitioner actually received total payments from Don's Sod Company of $ 279,809. Petitioners suggest that some of the endorsements on the back of *131 the checks are forgeries of petitioner's signature through which someone else apparently received some of the money respondent is charging to him. Petitioners dispute further the total 1981 allowable expenses relating to petitioner's work for Don's Sod Company, and petitioners now claim additional expenses against the alleged total payments received. As indicated, respondent claims that petitioner's taxable income from Don's Sod Company was at least $ 111,371, the difference between the $ 279,809 in total gross payments that the records of Don's Sod Company indicate were made to petitioner in 1981 and the amount of $ 168,438 that respondent believes to have been stipulated as the total deductible expenses incurred by petitioner in 1981 with respect to his work for Don's Sod Company. Addressing first the alleged stipulation of total expenses, we agree with petitioners. Paragraphs 15 and 16 of the stipulation of facts are ambiguous. Paragraph 16 refers to "agreed workers' expense listed in paragraph 15 above." Paragraph 15, however, does not refer to "agreed expenses" but only to expenses "respondent determined." Different words are used in the two paragraphs to refer to the same *132 numbers with the result that it is not clear what precise facts the parties agreed to. We also agree with petitioners that the $ 111,371 that respondent alleges petitioner earned in 1981 for managing the two sod fields involved in this case, on its face, is exorbitant and highly suspect. Furthermore, the evidence is reasonably clear that petitioner had expenses greater than those determined by respondent. We believe the credible evidence supports the following calculation of petitioner's taxable income in 1981 with respect to his work for Don's Sod Company. The evidence is not disputed that petitioner was to earn $ .75 per pallet with respect to sod production in the fields he managed on a day-to-day basis. Because it is not clear who managed day-to-day operations in the Hastings field from January 1 to May 8, 1981, petitioner is charged with this $ .75 per pallet income for both sod fields during those weeks. At an average of 1,500 pallets per week for 18 weeks, petitioner is charged with $ 20,250 in income for those weeks ($ .75 X 1,500 X 18 = $ 20,250). From May 8 to November 15, 1981, petitioner only managed the day-to-day work in the Hastings sod field, and he therefore *133 is charged with the foreman's share of the per pallet income for only the Hastings field for those 28 weeks, resulting in additional income of $ 14,700 ($ .75 X 700 X 28 = $ 14,700), plus an additional $ 975 for the one unusual week in which an additional 1,300 pallets were produced over the weekly average of 700 pallets ($ .75 X 1,300 = $ 975). Based on the above calculations, we conclude that petitioner's total taxable income, after expenses, in 1981 relating to his work for Don's Sod Company was $ 35,925 ($ 20,250 + $ 14,700 + $ 975 = $ 35,925). We note that the above figure is corroborated generally by dividing the total gross payments of $ 279,809 that respondent alleges petitioner received in 1981 by the gross per-pallet payment of $ 4.50. That computation suggests that 62,179 pallets were produced during the months petitioner worked for Don's Sod Company. Multiplying that number by the net amount of $ .75 that petitioner was to receive with respect to each pallet (including amounts paid to petitioners' son), total annual taxable income of $ 46,634 would be indicated. Self-Employment Tax Liability
Whether a taxpayer is liable for self-employment taxes on particular *134 income depends on whether the taxpayer is to be regarded as an independent contractor, as distinguished from an employee, with regard to such income. That determination, in turn, is made under the common law rules that define and distinguish employees and independent contractors. Sec. 3121(d)(2); sec. 31.3121(d)-1(c), Employment Tax Regs.
In this case, it is clear that petitioner is to be treated as an independent contractor with regard to the income he earned from Don's Sod Company. He had significant independence and discretion in how he performed his work and in the hiring and payment of other workers. Ellison v. Commissioner, 55 T.C. 142, 152-153 (1970). Petitioner also neglected to arrange for withholding of employment taxes from his income which an employee normally *186 would do. On the facts before us, we conclude that petitioner is to be regarded as an independent contractor and is liable for self-employment taxes on the income earned from Don's Sod Company. Section 6653(b) Addition to Tax
Section 6653(b) provides for an addition to tax of 50 percent of the underpayment if any part of the underpayment *135 of tax is due to fraud. Respondent bears the burden of proving by clear and convincing evidence for each year in issue (1) that there was an underpayment of tax and (2) that some portion of the underpayment was due to fraud. Sec. 7454(a); Rule 142(b). The existence of fraud is a question of fact to be resolved upon consideration of the entire record before the Court. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). In order to establish fraud, respondent must demonstrate that the taxpayer filed his return with the specific intent to evade a tax believed to be owed. Wilson v. Commissioner, 76 T.C. 623, 633 (1981). Direct evidence of intention is rarely available and is not necessary. Fraud is never to be imputed or presumed; however "its proof may depend to some extent upon circumstantial evidence, and may rest upon reasonable inferences properly drawn from the evidence of record." Stone v. Commissioner, 56 T.C. 213, 224 (1971). Any conduct the likely effect of which would be to mislead or conceal is indicative of fraud. Spies v. United States, 317 U.S. 492, 499 (1943). *136 The failure to keep adequate records is indicative of an attempt to defraud. Based upon the above factual findings and legal principles, we conclude that respondent has established by clear and convincing evidence that petitioners are liable for the fraud addition to tax. A substantial understatement of income and an underpayment of tax has been established and is not disputed by petitioners. Petitioners' failure to keep adequate books and records relating to petitioner's work for Don's Sod Company, the false description on their tax return of petitioner's employment status, misleading statements that were given to respondent's agents during the audit, and petitioners' failure to report on their 1981 tax return any income from Don's Sod Company, taken together establish petitioners' specific intent to evade payment of their correct Federal income tax liability for 1981. We so hold. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩